UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE ESTATE OF PATRICK LEE CURTIS, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>          Defendant. | Case No. 2:13-cv-00074-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. 26) |

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. 26). Having carefully considered both parties' briefs, the record, and oral arguments, the Court enters the following Memorandum Decision and Order denying Defendant's Motion:

## I. BACKGROUND

This case arises from Defendant Costco Wholesale Corporation's ("Costco") termination of Patrick Curtis's employment on November 27, 2010, after nearly 27 years of employment. Patrick Curtis ("Curtis") is now deceased. Def.'s St. Facts, ¶¶ 1, 2 (Dkt. 26-2). Plaintiffs Nicole S. Grimmer and Barbara Charbonneau (collectively "Plaintiffs"), are the co-representatives of Curtis's estate.

Costco fired Curtis because he allegedly violated Costco's Drug and Alcohol-Free Workplace Policy. *See* Kelso Aff., Termination/Resignation Form (Dkt. 29-2, p. 63).

**MEMORANDUM DECISION & ORDER - 1**

Costco store manager Steve Marcy ("Marcy") testified that when Curtis arrived for a work meeting on November 20, 2010, he was "stumbling and staggering", "appeared very inebriated", and "smelled like alcohol." Dale Aff., Ex. B, pp. 33-36 (Dkt. 26-9). *See also* Def.'s St. Facts, p. 5 (Dkt. 26-2). Marcy then drove Curtis to Kootenai Urgent Care for an alcohol concentration test, which indicated Curtis had a .293 blood alcohol level. (Dkt. 26-2, p. 5). Costco placed Curtis on suspension following the test and eventually terminated his employment altogether. (Dkt. 26-2, p. 7).

Costco's 2007 Drug and Alcohol-Free Workplace Policy (the "2007 Policy") describes two circumstances in which an employee is deemed to be "[u]nder the influence": (1) when an employee has tested positive for an unauthorized substance, like alcohol, or (2) when Costco concludes, due to an employee's appearance, actions, speech or bodily odors, that the employee is under the influence of an unauthorized substance. Dale Aff., Ex. E, p. 1 (Dkt. 26-12). The Policy allows the manager who "reasonably suspects an employee is . . . under the influence of an unauthorized substance" to "require the employee to undergo" an alcohol test. Dale Aff., Ex. E, p. 2 (Dkt. 26-12). When the testing process is employed, an initial screening test is administered and, if the results of that test are .02 or above, the employee is required to undergo a second, "confirmation test." *Id.* at p. 3. "Employees who test positive for drugs and/or alcohol or who otherwise violate" the 2007 Policy are subject to disciplinary action "including termination of employment." *Id.* at p. 4.

Plaintiffs' Complaint alleges that Curtis had a contract of employment with Costco that was breached when Costco failed to obtain a blood alcohol level confirmation test or provide Curtis with "the due process" provided by the Employee Agreement (Count One). Amd. Compl., ¶ 28 (Dkt. 14). Plaintiffs further allege that Costco did not have cause to terminate and, therefore, Costco's actions also violated the implied covenant of good faith and fair dealing (Count Two). *Id.* at ¶ 30.

Costco seeks summary judgment on both counts. Costco contends that the 2007 Policy disclaims any intention to create a contract; therefore, Costco was not required to obtain a confirmatory alcohol concentration test before terminating Curtis. In the alternative, Costco argues that even if required, Curtis refused to take a second test. Finally, Costco contends that the testing process is not the exclusive means by which Costco can determine that an employee is under the influence of alcohol. Applied to this case, Costco claims it could properly terminate Curtis's employment because he allegedly admitted to being under the influence, making the testing procedure unnecessary.

## II.   DISCUSSION

**A.   Legal Standards.**

In exercising diversity jurisdiction, this Court must apply state substantive law. *See Industrial Indem. Ins. Co. v. U.S.*, 757 F.2d 982, 985 (9th Cir. 1995). The federal rules, however, apply to the summary judgment procedure. Summary judgment is not a procedural shortcut, but rather a means to ensure justice while maintaining judicial

efficiency and economy.  *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-24 (1986).  A "principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses".  *Id.*  The Court must grant a motion for summary judgment when the evidence shows there is no genuine issue of material fact.  *Trinity Mountain Seed Co. v. MSD Agvet, a Div. of Merck & Co., Inc.*, 844 F.Supp. 597, 598 (D. Idaho 1994).  A dispute is genuine when both parties' arguments are supported by sufficient evidence and require a fact finder to make a determination.  *Id.* at 599.

In deciding a motion for summary judgment, the Court must construe the evidence in favor of the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The Court does not determine the credibility of evidence.  *Mintun v. Blades*, CV-06-139-S-BLW, 2008 WL 711636, at *2 (D. Idaho Mar. 14, 2008).  However, the party opposing summary judgment cannot rest its argument solely on statements un-supported by the record.  *Sommer v. Elmore Cnty*, 1:11-cv-00291-REB, 2013 WL 5274223, at *2 (D. Idaho Sept. 18, 2013).  It takes more than a mere "scintilla of evidence . . . to defeat a motion for summary judgment.  *International Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1068 (9th Cir. 2011).

At first, the moving party carries the burden, and must "[demonstrate] the absence of a genuine issue of [material] fact".  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To carry its burden, the moving party only needs to point out that there is no sufficient evidence to support the nonmoving party's claim.  *Mintun v. Blades*, 2008

WL711636, at *2. This shifts the burden to the non-moving party. *Muffley v. Gem County*, CV-05-466-S-BLW, 2008 WL 110970, at *1 (D. Idaho Jan. 8, 2008). "The nonmoving party must [then] go beyond the pleadings and show 'by [its'] affidavits, . . . depositions, answers to interrogatories, or admissions on file' that a genuine issue of material fact exists." *Id.* (quoting *Celotex*, 477 U.S. 317 at 324).

The Court need not "comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Rather, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

### B. The 2007 Policy and the 2010 Employee Agreement, together, constitute an employment contract between Costco and Curtis.

Idaho law presumes the existence of an "at-will" employment relationship[1] unless "the employee is hired pursuant to a contract that states a fixed term or limits the reasons for [termination]." *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 272 P.3d 1263, 1269 (Idaho 2012). A limitation to the at-will presumption may be express or implied. *Brown v. Valley Cnty*, 1:12-cv-00057-CWD, 2013 WL 1453368, at *8 (D. Idaho Apr. 9, 2013).

---

[1] In an at-will employment relationship, either party can terminate the union at any time, for any reason, without incurring liability. *Mitchell v. Zilog*, 874 P.2d 520, 523 (Idaho 1994) (citations omitted). Although Costco's Answer lists as a defense that Curtis's "employment with Costco was at all times at-will," *see* Dkt. 17, p. 10, neither party focused their arguments on this defense.

**MEMORANDUM DECISION & ORDER - 5**

An implied limitation exists when "circumstances surrounding an employment relationship" lead a "reasonable person [to] conclude that . . . the employer's [] right to terminate the employment relationship at-will [has] been limited by an implied-in-fact agreement of the parties." *Thompson v. City of Idaho Falls*, 887 P.2d 1094, 1097 (Idaho Ct. App. 1994). An employee manual also can give rise to an implied-in-fact agreement. *Brown*, 2013 WL 1453368, at *8. "Whether a particular manual implies an employee agreement may be a question of fact *unless* the handbook specifically [disclaims] any intention on the part of the employer to have it become a part of the employment contract." *Id.* (emphasis added).

According to Costco, the 2007 Policy "unambiguously [disclaims] any contractual obligation" and therefore "Plaintiffs' contention that a confirmatory test [found within the 2007 Policy] became part of Curtis' employment contract with Costco must fail as a matter of law." Def.'s Mem., p. 9 (Dkt. 26-1). Indeed, the "2007 Policy" states that it "is not intended to create a contract or alter the terms of the Employee Agreement." Dale Aff., Ex. E, p. 1 (Dkt. 26-12). Costco argues this language is analogous to the disclaimer in *Sommer v. Elmore County*, where a motion for summary judgment was granted on a similar argument. Def.'s Memo, p. 8 (Dkt. 26- 1). In *Sommer* the disclaimer provided, in part: "This personnel policy is not a contract. No contract of employment with Elmore Country will be valid unless it is signed in accordance with proper procedures . . . and unless it is signed by and contains the name of the employee who will be benefitted by the

contract." *Sommer v. Elmore Cnty*, 1:11-cv-00291-REB, 2013 WL 5274223, at *4 (D. Idaho Sept. 18, 2013).

The facts of this case, however, are distinguishable from *Sommer*. While both disclaimers are similar in that they disavow a contractual obligation, in *Sommer* this Court relied on more than the disclaimer to grant summary judgment. *See Sommer*, 2013 WL 5274223, at *7. The court considered the disclaimer language combined with "the discretionary nature of the Policy and [] Sommer's acknowledgment that she was an at-will employee," to conclude that the policy did not create an employment contract. *Id.* Thus, the mere presence of a disclaimer in this case is not dispositive, at least not upon the facts of this case in particular.

Instead, this case is more like *Brown v. Valley County*, where the court concluded that a policy manual's contract disclaimer did not preserve an employee's at-will status because the manual also included a stand alone "for cause" termination provision, lacked any at-will acknowledgment by the employee, and "when viewed as a whole . . . [placed] limitations on the reasons for discharge." *Brown*, 2013 WL 1453368 at *6-9. In this case, the 2010 Employee Agreement does not call for any at-will acknowledgment from an employee.[2] Dale Aff., Ex. E, pp. 1-4 (Dkt. 26-12). The Agreement does contain language describing certain employees as "at-will," but that language applies only to

---

[2] *See, e.g.*, *Sommer*, 2013 WL 5274223 (D. Idaho) (three things to preserve an employee's at-will status: (1) discretionary disciplinary policies, (2) contract disclaimers, and (3) at-will acknowledgments); *see also Brown v. Valley Cnty*, 2013 WL 1453368 (D. Idaho Apr. 9, 2013); *Harms v. Power Cnty*, 2013 WL 791452 (D. Idaho Mar. 4, 2013).

**MEMORANDUM DECISION & ORDER - 7**

probationary employees in their first 90 days and Curtis had worked for Costco for 27 years at the time he was terminated. Dale Aff., Ex. C, pp. 26, 87 (Dkt. 26-10). *Compare Brown*, 2013 WL 1453368 at *7 ("Other than during the ninety day introductory period, the Policy Manual did not unequivocally state that Brown was an at-will employee."). Additionally, other provisions of the Agreement specifically discuss termination for cause, such as: "[Costco reserves] the right to terminate your employment for good and sufficient cause as defined by Costco". Dale Aff., Ex. C, p. 26 (Dkt. 26-10).

Moreover, the 2007 Policy and the 2010 Employee Agreement must be read together to understand the entire contract. First, the "2007 Policy" disclaimer provides: "This policy is not intended to create a contract or alter the *terms* of the Employee Agreement." Dale Aff., Ex. E, p. 1 (Dkt. 26-12) (emphasis added). Such language implicitly emphasizes that the Employee Agreement also contains contractual terms. Second, even though the 2010 Employee Agreement is described as only "a general statement of company policies," it requires employees to "adhere to Company policies" (such as the 2007 Policy) as a condition of employment. Dale Aff., Ex. C, pp. 4, 87 (Dkt. 26-10). Third, employees must comply with the 2007 Policy "as a condition of their employment." Dale Aff., Ex. E, p. 1 § II (Dkt. 26-12). Fourth, employees must sign an "Acknowledgment of Receipt Form" as to the Agreement. The "Acknowledgment" provides that the Agreement "is not intended to replace the actual language in various

policies and procedures, but merely to act as a condensed summary." (Dkt. 26, Att. 10, p. 87).

Hence, the full scope of the 2010 Employee Agreement is only identified with reference to the 2007 Policy and the other policies that Agreement summarizes. The 2007 Policy, when read together with the Employee Agreement, did not effectively disclaim a contractual obligation.

This proposition that the Employment Agreement and Policy are read together to understand the entire contract is also supported by other language in the Agreement. For example, only a "document addressing Company policies that is *inconsistent*" with the Agreement is "superseded." Dale Aff., Ex. C, p.4 (Dkt. 26-10) (emphasis added). The 2007 Policy is consistent with the 2010 Agreement and is therefore read together to define when an employee suspected of being under the influence may be disciplined.

In summary, the Policy's binding language, combined with the reasons listed above, demonstrate that the Policy is part of the employment contract between Costco and Curtis and the Policy did not effectively disclaim any intention that it be considered as part of the employment agreement between Curtis and Costco.[3]

---

[3] Costco argues that a ruling linking the 2007 Policy to the employment contract "would give rise to anomalous results such as requiring a test in the case of an employee caught red-handed with drugs in his or her possession or preventing Costco from terminating that same employee if the test results were negative despite being in possession." Reply, p. 6 (Dkt. 30). The Court is not so persuaded, as the 2007 Policy prohibits employees from possessing illegal drugs or open containers of alcohol (Policy §IV.A.1, 2), and permits discipline of employees (including termination) for violating any of the Policy's prohibitions (Policy §IX.D). Dale Aff., Ex. E, pp. 2, 4 (Dkt. 26-12). Indeed, as argued by Costco, in addition to use of the testing

**MEMORANDUM DECISION & ORDER - 9**

## C. The Employment Terms are Unambiguous and Provide Two Grounds for Discipline of Employees Under the Influence.

Having concluded that the 2007 Policy is part of the contractual agreement between Curtis and Costco, the Court must consider what that Policy requires. When construing contract terms, the Court looks to the whole contract and seeks to "give effect to every part thereof." *Steel Farms, Inc. v. Croft & Reed, Inc.*, 297 P.3d 222, 229 (Idaho 2012). First is a review of the plain language, to determine whether the contract is ambiguous as a matter of law. *Potlatch Educ. Ass'n v. Potlatch School Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho 2010). Contract language is ambiguous when it carries at least two different reasonable interpretations, or is nonsensical. *Steel Farms, Inc.*, 297 P.3d 222 at 229. Here, the Policy language regarding discipline for being under the influence "is plain and unambiguous . . . [and the] Court will give the contract as a whole its plain meaning." *Weisel v. Beaver Springs Owners Ass'n*, 272 P.3d 491, 500 (Idaho 2011).

The 2007 Policy "prohibits employees from engaging in" certain types of conduct, including "[refusing] to cooperate in a drug and/or alcohol test" and "[b]eing under the influence of unauthorized substances," including alcohol. Dale Aff., Ex. E, p. 2 (Dkt. 26-12). Consequences for such conduct includes possible termination. Dale Aff., Ex. E, p. 4 (Dkt. 26-12). The 2007 Policy provides that an employee is under the influence when "actions, appearance, speech or bodily odors [] reasonably cause [Costco] to conclude

---

process as a grounds for termination, Costco also could discipline or terminate an employee if a manager reasonably concluded that employee was under the influence.

**MEMORANDUM DECISION & ORDER - 10**

that [the employee is] impaired because of the use of unauthorized substances," *or* if he or she "test[s] positive for drugs and/or alcohol". Dale Aff., Ex. E, p. 1 (Dkt. 26-12). Thus, Costco has two grounds to discipline an employee for being under the influence.

Plaintiffs contend that "Costco breached the terms of its contract . . . by terminating [Curtis] without first obtaining results of [a confirmation test]" proving that he tested positive for alcohol. Am. Compl., p. 8 (Dkt. 14). Costco argues that the Court need not consider whether Costco might have breached the contract by disciplining Curtis without a confirmation test because it had alternative grounds for discipline – *i.e.*, the Policy provision that allows Costco to reasonably conclude an employee is impaired based solely on the employee's actions, appearance, speech or bodily odors.

However, if Costco did not reasonably conclude that Curtis was under the influence, as defined in the Policy, then whether Costco appropriately followed the testing process remains an issue. Thus, in ruling upon Costco's motion for summary judgment, the Court must consider both (1) the testing provision and Curtis's alleged refusal to cooperate in testing, and (2) the Policy's procedures on how one "reasonably concludes" when an employee is "under the influence" and whether the facts are undisputed that Costco made a reasonable conclusion in that regard.

**D. Disputed Issues of Material Fact Preclude Summary Judgment.**

**1. There is a question of fact as to whether Costco concluded that Curtis was "under the influence", as defined by the 2007 Policy.**

Counsel for Costco argued at the hearing that Costco had the right to fire Curtis because his actions, appearance, speech or bodily odors caused Costco to conclude that Curtis was "under the influence." Costco manager Dan Frigaard stated that Curtis admitted on November 20, 2010 that he was "basically wasted and blitzed". Kelso Aff., Marcy Dep., p. 71 (Dkt. 29-3). Costco says such an admission supports its argument that Curtis could have been fired for being under the influence of alcohol, without testing. However, Curtis denied any such conversation. Kelso Aff., IDL Hearing, pp. 28-29 (Dkt. 29-8). Thus, there is a genuine dispute of material fact as to whether Curtis admitted to being under the influence.

The Court has considered other evidence proffered by Costco to support its argument that it could have fired Curtis by reasonably concluding from Curtis's appearance, etc., that he was under the influence. For example, Costco manager Steve Marcy testified Curtis arrived to a work meeting "stumbling and staggering", appearing "very inebriated", and "smell[ing] like alcohol". Dale Aff., Ex. B, p. 3 (Dkt 26- 9). Indeed, such observations could have been drawn upon by the Costco managers to consider whether there was enough information before them to reasonably conclude that Curtis was under the influence, but that is not the issue at hand. The relevant issue

instead is whether Costco actually reached such a conclusion and relied on it as the basis for terminating Curtis.

In considering that issue, the Court concludes for purposes of summary judgment that even though information in the record indicates that Costco suspected Curtis may have been under the influence, the record does not establish as a matter of law that Costco ever reached that conclusion. For example, Costco gave Curtis certain employment "counseling" notices contemporaneous to the events of November 20, 2010. One such notice said that Costco "*suspected* [Curtis] of being intoxicated." Dale Aff., Ex. I, p. 2 (Dkt. 26- 16) (emphasis added). Additionally, during an Idaho Department of Labor hearing, Marcy said that Curtis was terminated "because [he] . . . was *suspected* of being under the influence." Kelso Aff., IDL Hearing, pp. 13, 14) (Dkt. 29-8) (emphasis added). Hence, there certainly is evidence that Costco suspected Curtis was "under the influence" of alcohol, but such evidence does not – at least not against summary judgment standards – become the same thing as a *reasonable conclusion* that Curtis was under the influence, which is what the Policy requires when Costco relies on an employee's actions, appearance or speech to determine the employee is "under the influence" and subject to discipline. *See* Dkt. 26-12 (defining "under the influence" to include when "an employee's actions, appearance, speech, or bodily odors . . . . reasonably cause the Company to conclude that the employee is impaired because of the use of unauthorized substances"). Costco's own evidence is that its managers carried a "suspicion," not that

they had reached a "reasonable conclusion."  *See* Dkt. 29-2 (Employee Counseling Notice stating "we suspected [Curtis] of being intoxicated" and that the "DISCUSSION AND ACTION TAKEN" was to take Curtis in "for a breathalyzer and drug test immediately").

Perhaps at the time of the pertinent events the managers were not clearly focusing on the distinction contained in the Policy and, had they been, they might have described their actions differently.  But that question is for decision at trial.  Alternatively, the evidence could be argued to suggest that the managers were focused upon the language of "reasonable suspicion," a threshold which the Policy requires as a predicate to the company's right to employ testing procedures.  *See id.*, Ex. E, p.2 (explaining that, if a manager "reasonably suspects an employee of [being] under the influence . . . while . . . working . . . the Company may require the employee to undergo" an alcohol test).  Indeed, Marcy initiated testing procedures – the "other" method by which the Policy allows Costco to determine whether an employee is under the influence.  A reasonable inference drawn in favor of the non-movant as to such a choice would be that Costco was uncertain as to whether Curtis was "under the influence."  Accordingly, a question of fact remains as to whether Costco ever actually concluded that Curtis was "under the influence" and terminated him under that provision of the 2007 Policy.  If a trier of fact finds Costco did not reasonably conclude Curtis was under the influence (in compliance with the 2007 Policy), then the fact-finder would need to go on to determine whether Costco breached

the employment agreement by initiating the testing procedure and not obtaining a confirmation test.

**2. A material question of fact exists as to whether the testing procedures set forth in the 2007 Policy were followed.**

The 2007 Policy includes a "Summary of Alcohol Collection and Testing Procedures" which begins by stating "Costco *will follow* the general collection and testing procedures. . . ." Dale Aff., Ex. E, p. 3 (Dkt. 26-12) (emphasis added). Those procedures are described in the Summary: "A screening test will be done first. . . . If the employee's measured alcohol concentration is .02 or more, the employee shall be required to take a confirmation test. *The results of the confirmation test*, not the screen test, *are determinative*." *Id.* (emphases added).

Nurse Karen DeSeve administered an initial alcohol test on Curtis, which indicated his Blood Alcohol Content was .293. Obviously, this result was far over the .02 threshold which would trigger the need for a "confirmation test." Kelso Aff., Test Results, p. 72 (Dkt. 29-5); Dale Aff., Ex. E, p. 3 (Dkt. 26-12). However, the record is clear that only one test was administered. Dale Aff., Ex., G, p.3 (Dkt. 26-14). Ms. DeSeve testified that after Curtis questioned the result of the first test, she "*suggested* to him" that she would or could do a second test, but "he declined." Dale Aff., Ex. G, p. 3 (Dkt. 26-14) (emphasis added). The record does not, however, indicate that Curtis was aware that the Policy called for a confirmation test, and that the confirmation test (not the threshold test) would be determinative. Moreover, Ms. DeSeve's testimony raises an inference, if drawn

**MEMORANDUM DECISION & ORDER - 15**

in favor of the non-movant, that she was not aware of the Policy's *requirement* for a confirmation test. Had she been, a reasonable fact-finder could conclude that the obvious task before her would have been to take a second test, rather than to offer a second test as just an option.

Costco argues that a refusal to cooperate in an alcohol test is considered a violation of the 2007 Policy and may result in termination. Dale Aff., Ex. E, pp. 1, 16 (Dkt. 26-12). Costco contends that "Curtis was offered a 'confirmatory test' but refused to participate". Def.'s Mem., p. 12 (Dkt. 26-1). Costco argues that such a refusal is also evidenced by Curtis signing an "X" in place of his signature on the test results (*see* Dkt. 29-5, p. 72). Def.'s St. Facts, pp. 5-6 (Dkt. 26-2).

Other evidence, however, including Nurse DeSeve's testimony, suggests that Curtis was "cooperative" during the testing procedures.[4] Dale Aff., Ex. G, p.1 (Dkt. 26-14); Kelso Aff., DeSeve Dep., pp. 19, 32, 35 (Dkt. 29-3). Curtis also testified at the IDL hearing that he did not "in any manner refuse to take an alcohol test." (Dkt. 29-8, Tr., p. 29). Additionally, Nurse DeSeve simply "suggested" a second test, and Curtis declined. Dale Aff., Ex. G, p. 3 (Dkt. 26-14). In other words, the evidence is not that Nurse DeSeve said to Curtis, "You are required to take another test," and Curtis said "no." In light of this conflicting evidence, there is a dispute of material fact as to whether Curtis refused to cooperate with the alcohol testing procedures.

---

[4] Additionally, Marcy testified at the IDL hearing that Curtis "didn't refuse a test". (Dkt. 29-8, Tr., p. 13).

In conclusion, the Court finds there are genuine and disputed questions of material fact surrounding the breach of contract claim. Accordingly, Costco is not entitled to summary judgment on Count One.

### E.     Implied Covenant of Good Faith and Fair Dealing.

Plaintiffs' second claim is that Costco breached the Implied Covenant of Good Faith and Fair Dealing by "[failing] to perform, in good faith, its obligation to [Curtis] to only terminate him for cause after the receipt of confirmation test results [] established he was . . . under the Influence of alcohol." Amd. Compl., p. 8 (Dkt. 14). A party violates the implied covenant of good faith and fair dealing when it "violates, nullifies or significantly impairs any benefit of the . . . contract". *Battelle Energy Alliance, LLC v. Southfork Sec., Inc.*, 4:13-cv-00442-BLW, 2014, WL 970057, at *11 (D. Idaho Mar. 12, 2014). The covenant "requires that parties perform in good faith the obligations imposed by their agreement." *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 390 (Idaho 2004). In the Court's view, the factual disputes surrounding the breach of contract claim also raise genuine issues of material fact as to whether the elements of the claim of violation the Implied Covenant of Good Faith and Fair Dealing have been satisfied. Therefore, Costco is not entitled to summary judgment on this second count.

### F.     Damages

In Idaho, "the measure of damages is such as will compensate for the loss suffered as the result of a breach of contract." *O'Dell v. Basabe*, 810 P.2d 1082, 1098 (Idaho

1991). Damages are not awarded to punish the breaching party but to "fully recompense the non-breaching party for its losses sustained [due to] the breach" *Anderson v. Gailey*, 606 P.2d 90, 95 (Idaho 1980). The fact that contract damages "are not capable of exact proof does not preclude their availability as a matter of law." *O'Dell v. Basabe*, 810 P.2d at 1098. However, the plaintiff must prove with "reasonable certainty" the "damages relating to lost future benefits." *Hummer v. Evans*, 923 P.2d 981, 987 (Idaho 1991).

In this case, the damages at issue on summary judgment are tax penalties Curtis incurred because he withdrew funds early from his retirement account. (Dkt. 14). Costco argues that tax penalties are "too attenuated, not plausibly . . . connected, and simply too remote" to be allowed as damages as a matter of law. (Dkt. 26, Att. 1, pg. 16). Costco relies heavily on this Court's decision in the related case of *Grimmer v. Costco Wholesale Corp.*, 2:13-cv-00075-REB, 2013 WL 5436823, at *1 (D. Idaho Sept. 27, 2013). In that case, Curtis' sister Nicole Grimmer ("Grimmer") (who is also one of the Plaintiffs in this case) sought damages as a beneficiary of a life insurance policy Curtis had allowed to lapse for non-payment of premiums. Grimmer argued that Costco's termination of Curtis caused him to stop making premium payments. *Id.* This Court ruled that "Grimmer's allegations [were] simply too remote . . . to state a claim for relief" because "there [was] no plausible basis to believe that simply because Curtis had a life insurance policy, Costco should have known that terminating Curtis's employment would lead him to eventually stop paying his insurance premiums 13 months later." *Id.* at *4, *7.

The financial circumstances and the alleged damages at play in this case, however, are not so remotely connected. A person such as Curtis who is no longer employed may choose to make an early withdrawal from a retirement account if he or she has no other resources to meet the expenses of daily living. A fact-finder could reasonably infer from the evidence that, after his firing from Costco, Curtis had to find some funds to replace his income. The issue is not whether Curtis could have taken a loan from the retirement account and timely made those payments had he remained employed, *see* Def.'s Mem., p. 14 (Dkt. 26-1), but rather whether Curtis's withdrawal from that account, allegedly made to assist with living expenses, was made necessary by his firing. Hence, the damages relating to tax penalties rise above the level of speculation for purposes of summary judgment review. Accordingly, summary judgment is denied on this issue.[5]

---

[5] This does not mean, of course, that Plaintiffs will be able to prove and recover these damages if this case progresses to trial. Rather, this ruling simply recognizes that the connections between such pieces of the record rise above the level of speculation, and are sufficient to proceed past the summary judgment stage of the proceedings. Indeed, the trier of fact many determine that all of the tax penalties on the entire amount withdrawn by Curtis following his termination may not be sufficiently connected to Costco's actions to be recoverable because, for instance, perhaps it can be shown that Curtis withdrew more than he needed to cover the loss of his employment wages. Those are factual issues not appropriate for resolution on summary judgment.

**MEMORANDUM DECISION & ORDER - 19**

### III. ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion for Summary Judgment (Dkt. 26) is **DENIED**.

2) Counsel shall meet and confer and provide one list of dates when both counsel are available for trial between July and December of 2015. This list shall be filed on CM/ECF on or before April 10, 2015 as a "Notice of Available Trial Dates."

3) Counsel also shall meet and confer to discuss possible ADR options and shall work with the Court's ADR Coordinator to schedule ADR. Counsel's Notice of Available Trial Dates shall include a statement informing the Court of the details of such ADR.

DATED: **March 18, 2015**.

*/s/ Ronald E. Bush*

Honorable Ronald E. Bush
U. S. Magistrate Judge